UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATHANIEL WILLIAMS,<br><br>         Plaintiff,<br><br> v.<br><br>TIM GARRETT, *et al.*,<br><br>         Defendants. | Case No. 3:22-CV-00264-CLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF Nos. 45, 58] |

This case involves a civil rights action filed by Plaintiff Nathaniel Williams ("Williams") against Defendants Tim Garrett ("Garrett"), Tara Carpenter ("Carpenter"), Dawn Bequette ("Bequette"), Kara LeGrand ("LeGrand"), and Renee Baker ("Baker") (collectively referred to as "Defendants"). Currently pending before the Court are the parties' cross motions for summary judgment. First is Williams's motion for summary judgment, (ECF No. 45), to which Defendants responded, (ECF No. 50), and Williams replied. (ECF No. 60.)[1] Subsequently, Defendants filed their motion for summary judgment. (ECF Nos. 58, 64.)[2] Williams responded, (ECF No. 62), and Defendants replied. (ECF No. 63.) For the reasons stated below, the Court denies Williams's motion for summary judgment, (ECF No. 45), and grants Defendants' motion for summary judgment, (ECF No. 58), in its entirety.

I.   **BACKGROUND**

  A.   **Procedural History**

Williams was formerly an inmate in the custody of the Nevada Department Corrections ("NDOC"). On June 13, 2022, Williams filed a civil rights complaint under 42

---

[1]   Williams's reply was due on May 22, 2024, (ECF No. 57), but was received by the Court on May 23, 2024. (ECF No. 60.) However, the document itself is dated as being signed on May 15, 2024. (*Id.* at 11.) Based on the date of Williams's signature on the document and his status as a *pro se* litigant, the reply is deemed timely.

[2]   ECF No. 64 is an errata to Defendants' motion for summary judgment.

U.S.C. § 1983 for events that occurred while he was incarcerated at the Lovelock Correctional Center ("LCC").[3] (ECF No. 1.) On July 13, 2023, Williams filed a second amended complaint ("SAC"), (ECF No. 34), which the Court screened pursuant to 28 U.S.C. § 1915A(a). (ECF No. 36.) Williams's complaint alleges Defendants oversaw the mishandling of Williams's legal mail containing sensitive, private, and confidential information which created a risk to his safety. (ECF No. 34.) Based on these allegations, the Court allowed Williams to proceed on three claims: (1) a Fourteenth Amendment right to privacy ("Claim 1"); (2) a First Amendment mishandling of outgoing mail ("Claim 2"); (3) an Eighth Amendment deliberate indifference to safety ("Claim 3"). (ECF No. 36 at 4.) Each claim was allowed to proceed against all Defendants. (*Id.*)

On April 3, 2024, Williams filed his motion arguing summary judgment should be granted because: (1) Defendants unconstitutionally allowed inmates to copy and sort confidential documents and attorney correspondence; (2) Defendants allowed a policy of sending scratch paper to the school that lacked adequate safeguards to prevent the dissemination of confidential information; (3) the policies allowed his confidential information to be released, causing him to be labeled as a "snitch;" and (4) Defendants were deliberately indifferent by allowing law library and education workers to be moved into his unit and denying him a protective transfer. (ECF No. 45.)

On May 14, 2024, Defendants filed their motion for summary judgment. Defendants argue they are entitled to summary judgment because: (1) all three of Williams's claims fail on the merits; (2) Defendants did not personally participate in any alleged constitutional violations; and (3) Defendants are entitled to qualified immunity regardless of any alleged constitutional violations. (ECF No. 58.)

///

///

---

[3] Although Williams is no longer incarcerated, the Court will use the term "inmate" or "prisoner" throughout the order because the alleged constitutional violations occurred while Williams was an inmate.

B. **Factual Summary**

The LLC law library allows inmates to make copies of documents by submitting copy request forms. (*See* ECF No. 64-1.) When a copy request form is filled out, a copy of the form is retained until the original is returned to the law library to ensure there is proof of the copies made. (*Id.* at 2.) Copy request forms contain the inmate's name and prison identification number. (ECF No. 58-1; ECF No. 58-6.) NDOC does not consider the information on the copy request forms to be confidential.[4] (ECF No. 64-1 at 2.) Prior to the incident at issue here, discarded copy request forms would be used in the Education Department as scratch paper. (*Id.*) According to the declaration from the law library supervisor, "[c]opies of personal papers or legal documents are not kept for any reason in the law library" and were returned to the requestor after the copies are made. (*Id.* at 1-2.) If an error occurs in copying a document, "it is destroyed immediately." (*Id.* at 3.)

In 2020, inmate Charles Wirth ("Wirth") brought copies of copy request forms with his name and the name of other inmates to the law library. (*Id.* at 2-3.) Bequette reviewed the papers and found that all of them were copy request forms, including one from Williams. (*Id.* at 3.) Bequette told Wirth no confidential information appeared on the copy request forms but to prevent the incident from reoccurring, the law library "would pull the scratch paper from education." (*Id.*)

On July 22, 2020, Bequette received a kite from Williams regarding the scratch paper incident. (ECF No. 64-1 at 3; ECF No. 58-2; ECF No. 58-6.) Bequette responded that no confidential information was disclosed, and that scratch paper would no longer be sent to the school. (*Id.*) Williams claimed his personal grievances were included in the scratch paper but refused to show the papers to Bequette. (ECF No. 64-1 at 3.) Later, Williams went to Bequette's office and claimed "bad copies" of personal information were

---

[4] Defendant Bequette provided a declaration stating copy request forms contain an inmate's "prison *indemnification* number," however, based on the authenticated copy of the request form provided the Court interprets this as a typographical error and that Bequette intended to write "prison *identification* number." (ECF No. 64-1 at 2 (emphasis added).)

3

given out but again refused to show the paper to Bequette. (*Id.*) Williams also accused Bequette of using Williams's Prison Rape Elimination Act ("PREA") claim as scratch paper. (*Id.*) In her declaration, Bequette states she never disclosed any of Williams's medical information or the fact that he filed a PREA claim, did not use his PREA claim as scratch paper, and did not label him as a "snitch." (*Id.*) Bequette also declares she only knows Williams filed a PREA claim because Williams himself mentioned it, *in the presence of other inmates*. (*Id.* at 4) (emphasis added.)

Defendants provide sworn declarations from Garrett, Carpenter, LeGrand, and Baker that assert each Defendant "never authorized the law library to use inmate's personal papers as scratch paper" and were "unaware that the law library was using inmate order forms or any other document for that purpose." (ECF No. 58-11 at 2; ECF No. 58-10 at 2; ECF No. 58-8 at 2; ECF No. 58-9.) The declarations further assert that Garrett, Carpenter, LeGrand and Baker "never allowed, nor implemented a policy that allowed any inmate to read Mr. Williams' outgoing legal mail" and were "not directly involved in the legal mail process." (ECF No. 58-11 at 3; ECF No. 58-10 at 3; ECF No. 58-8 at 3; ECF No. 58-9.) Garrett, Carpenter, LeGrand, and Baker also declare they did not institute nor were "aware of any 'policy' to allow inmates to sort the 'bad copies' in the law library." (*Id.*)

Defendants provide declarations establishing that all inmate movement between institutions is coordinated by the Offender Management Division. (ECF No. 58-9 at 2; ECF No. 58-10; ECF No. 58-10 at 3.) The sworn declarations provided by Garrett, Carpenter, LeGrand, and Baker establish that they did not have authority to authorize a transfer to another NDOC institution. (ECF No. 58-11 at 2; ECF No. 58-10; ECF No. 58-8 at 2; ECF No. 58-9 at 2.) LeGrand's sworn declaration asserts that she did not authorize any transfers of law library workers into Williams's unit because, as a caseworker, LeGrand could forward requests for inmate transfers or recommend a classification hearing but did not have the authority to order a transfer on her own. (ECF No. 58-8 at 3.) LeGrand and Garrett's sworn declarations also establish that during the subject time frame, there were

times that workers were housed in the same unit due to Covid protocols. (ECF No. 58-8 at 3; ECF No. 58-11 at 3.) The declarations also establish that those Covid protocols prompted many bed moves during that time period. (*Id.*) However, LeGrand and Garrett both declare they did not authorize any moves into Williams's unit for any other purpose. (*Id.*)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence

of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

McDowell's case is proceeding on three claims: (1) a Fourteenth Amendment right to privacy claim ("Claim 1"); (2) a First Amendment mishandling of outgoing mail claim ("Claim 2"); (3) an Eighth Amendment deliberate indifference to safety claim ("Claim 3"). (ECF No. 36 at 4.) Before turning to the merits of each claim, the Court will first address whether Defendants Garrett, Carpenter, LeGrand, and Baker personally participated such that they could be held liable for the constitutional deprivations alleged in Claims 1 and 2.

#### A. Personal Participation

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a

showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)); *see also Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020); *King v. Cnty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018).

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). After-the-fact knowledge of an alleged constitutional violation, which was already remedied, cannot rise to the level of participation required for a § 1983 suit. *See Bradberry v. Nevada Dept. of Corrections*, No. 3:11-cv-00668-RCJ-VPC, 2013 WL 4702953, at *15-16 (D. Nev. Aug. 30, 2013) (a supervisor cannot be liable for after-the-fact complaint of alleged constitutional violations or after-the-fact knowledge of

the event).

Williams claims that Garrett, Carpenter, LeGrand, and Baker are responsible for the law library scratch paper policy that violated Williams's Fourteenth Amendment right to the nondisclosure of his private information and First Amendment right to have private legal mail. (*See* ECF No. 34.) As the scratch paper policy forms the basis for both claims, the analysis of whether Garrett, Carpenter, LeGrand, and Baker personally participated in either alleged constitutional violation is the same. In this case, Williams has the burden of proof on each claim at trial and therefore must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, Williams does not provide any evidence showing that Garrett, Carpenter, LeGrand, or Baker actually knew of the policy, much less that they were each responsible for the policy.

By contrast, Defendants may meet their initial burden by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's claim or claims. *See Pakootas*, 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Here, as to the policy itself, Defendants provide sworn declarations from Garrett, Carpenter, LeGrand, and Baker that assert each Defendant "never authorized the law library to use inmate's personal papers as scratch paper" and were "unaware that the law library was using inmate order forms or any other document for that purpose." (ECF No. 58-11 at 2; ECF No. 58-10 at 2; ECF No. 58-8 at 2; ECF No. 58-9.) Garrett, Carpenter, LeGrand and Baker "never allowed, nor implemented a policy that allowed any inmate to read Mr. Williams' outgoing legal mail" and were "not directly involved in the legal mail process." (ECF No. 58-11 at 3; ECF No. 58-10 at 3; ECF No. 58-8 at 3; ECF No. 58-9.) Garrett, Carpenter, LeGrand, and Baker also did not institute nor were "aware of any 'policy' to allow inmates to sort the 'bad copies' in the law library." (*Id.*)

As these Defendants did not know of the policy that allowed inmates to read Williams's mail nor were they involved in the legal mail process, they could not have been personally involved in any alleged constitutional deprivation arising from the policy.

9

*Felarca*, 891 F.3d at 819-20. There is also no causal connection between these Defendants and any alleged unconstitutional policy because if they did not know the policy existed, they could not have knowingly refused to terminate the policy. *Rodriguez*, 891 F.3d at 798; see also *Bradberry v. Nevada Dept. of Corrections*, No. 3:11-cv-00668-RCJ-VPC, 2013 WL 4702953, at *15-16 (D. Nev. Aug. 30, 2013) (a supervisor cannot be liable for after-the-fact complaint of alleged constitutional violations or after-the-fact knowledge of the event). This is sufficient to show an absence of evidence to support that Garrett, Carpenter, LeGrand, or Baker personally participated in crafting or maintaining the allegedly unconstitutional policy. *See Pakootas*, 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102.

Consequently, the Court finds that Defendants Garrett, Carpenter, LeGrand, and Baker did not personally participate in any alleged violations of Williams's Fourteenth or First Amendment rights and therefore cannot be liable under § 1983. *Taylor*, 880 F.2d at 1045. Thus, the Court grants summary judgment in favor of Defendants Garrett, Carpenter, LeGrand, and Baker on Claims 1 and 2.

### B.     Claim 1 – Fourteenth Amendment

Now, the Court will turn to the merits of Claim 1 as to the sole remaining defendant, Bequette. "[F]ederal constitutional law recognizes a 'right to informational privacy' stemming from 'the individual interest in avoiding disclosure of personal matters.' " *Endy v. County of Los Angeles*, 975 F.3d 757, 768 (9th Cir. 2020) (quoting *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)). Although no case has expressly defined the right to privacy's boundaries, Ninth Circuit opinions have indicated the right to informational privacy extends beyond medical information. *Varo v. Los Angeles County District Attorney's Office*, 473 F.Supp.3d 1066, 1073 (C.D. Cal. 2019) (citing *Seaton v. Mayberg*, 610 F.3d 530, 537 (9th Cir. 2010) (internal citations and quotation marks omitted), *Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014), *as amended* (Sept. 2, 2014); *Crawford*, 194 F.3d at 958; *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998)).

However, the right "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Id.* (internal quotation marks omitted). Legitimate governmental interests combined with protections against public dissemination can foreclose a constitutional violation. *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 138 (2011). In the prison context, "imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 486 U.S. 517, 524 (1984). Inmates only retain privacy rights that are not inconsistent with legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89 (1987) (a prison regulation which impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests).

Williams claims that Defendants "practiced, enforced, condoned, [and] accepted a policy to send 'trash' from the law library at LCC to the LCC education department for inmate students to use as 'scratchpaper.'" (ECF No. 34 at 20.) Williams alleges that "bad copies" and other "trash" was put in a pile to be sorted to determine what could be sent to classrooms for use as scratch paper. (*Id.* at 6, 21.) Williams claims there were no safeguards to prevent disclosure of confidential information. (*Id.* at 21.)

Defendants argue there is no evidence that Williams's private records were disseminated. (ECF No. 58.) Defendants argue that Williams did not provide copies of his records showing they were disseminated to the Court nor did Williams allow NDOC staff to review the documents. (*Id.* at 4-5, 8.) Defendants provide a sworn declaration from Bequette who denies disclosing William's medical information or that he had filed a Prison Rape Elimination Act ("PREA") claim to other inmates. (ECF No. 64-1 at 3.) Further, in her declaration, Bequette states she only knew that Williams had a PREA claim because he told her "in front of the inmate law library workers." (*Id.* at 4.) Warden Baker and Legrand both declare that they were unaware that the law library was using inmate copy order forms or other documents as scratch paper. (ECF No. 58-9, 58-8 at 2.)

Here, both parties moved for summary judgment and therefore both parties bear the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509

F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id*. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas*, 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. As the plaintiff in this action, Williams has the burden of proof at trial and must demonstrate that no reasonable juror could find that Defendants did not violate his Fourteenth Amendment right to privacy. *Soremekun*, 509 F.3d at 984.

Williams provides sworn declarations from inmates with knowledge of the scratch paper situation at LCC. (*See* ECF No. 34 at 32-37; ECF No. 45 at 28.) These declarations do provide sufficient proof to show that Williams's private information was disseminated. Inmate Cowart's declaration states he "was given copies of inmates personal documents to use as scratch paper at education." (ECF No. 34 at 35.) Cowart further declares a small stack of these papers belonged to Williams included "grievances with medical information." (*Id.*) This is sufficient to provide evidence at the summary judgment stage that Williams's personal information was disseminated in the education department. *See* Fed. R. Civ. P. 56(c) (nonmoving party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists); *Matsushita,* 475 U.S. at 586 n. 11.

However, these declarations do not establish that the law library sent scratch paper to education which included Williams's confidential information or legal mail. Cowart's declaration merely states that he "was given" papers and the remaining declarations rely on Cowart's explanation of where the documents came from. (ECF No. 34 at 35.) The declaration from Bernard Young only establishes that Cowart told him they were being used as scratch paper. (*Id.* at 33.) The declaration from Dennis Barker establishes that

he saw inmate law library workers come from the law library to bring scratch paper and that he was tasked to cut the paper into halves, but Barker only describes the scratch paper as "assorted papers." (*Id.* at 37.) There are no sworn statements from individuals with personal knowledge of the facts to show that the scratch paper from the law library is the source of any disclosure of Williams's personal information. Moreover, there is no evidence the law library was the only source for education's scratch paper. Evidence provided for other purposes establishes that Williams sent grievances to places other than the library. (*See e.g.*, ECF No. 58-11 (declaration from Garrett, who was warden at the time and did not work in the law library, stating he received a grievance from Williams).) Thus, Williams has failed to provide evidence establishing that the law library's scratch paper policy *caused* his information to be distributed.

Regardless, even if the Court assuming all facts in the light most favorable to Williams, including that Williams's confidential information was distributed because of the law library's policy of sending scratch paper to education, Williams does not allege that Defendant Bequette acted with more than negligence. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cty of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citing Daniels v. Williams, 474 U.S. 327, 332 (1986)); *see also Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (clarifying that *Daniels* applies to substantive, as well as procedural, due process). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Davidson*, 474 U.S. at 331 (emphasis original)). "In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Id*. at 347.

Williams's complaint states he was told "Bequette had all the 'bad copies' go to a junk pile to be sorted & confidential papers are supposed to be shredded but were not by mistake. . . ." (ECF No. 34 at 6.) Williams repeatedly refers to his documents being distributed "by mistake" and does not allege – or provide evidence – that any confidential

documents were sent to the education department knowingly. (*See, e.g.,* ECF No. 45 at 22 ("the bad copies shouldve (sic) been shredded but werent (sic).").) At most, Williams is alleging that the person sorting and destroying documents *should* have prevented the documents from being sent, not that the person *knowingly* or *intentionally* sent the documents. (*See* ECF No. 34 at 6; *see, e.g.,* ECF No. 45 at 22.) Thus, assuming Williams's claims are true, and Defendants did allow his medical grievances to be used in the education department as scratch paper, Williams fails to state a claim for constitutional deprivation because he is alleging no more than negligent conduct. *Doe v. Beard*, No. EDCV 13-02262 DDP, 2014 WL 3507196, at *6 (C.D. Cal. July 14, 2014) (finding the Plaintiff's allegations that Defendants allowed his medical records to be disclosed alleged only negligent conduct and were therefore insufficient to state a claim) (citations omitted).

Next, the Court addresses Williams's argument that his documents were disseminated "due to an unconstitutional policy lacking safeguards." (*Id.* at 20.) Disclosures resulting from a failure by Defendants to take appropriately robust safeguards may constitute conduct that is more than negligent and thus subject to liability under Section 1983. *Beard*, 2014 WL 3507196 at *6. However, Williams does not explain why or how the policy was lacking safeguards. The declaration from Bequette shows that copies of personal papers or legal documents were not kept in the law library and copies would either be given to the inmate or destroyed immediately if an error occurred during copying. (ECF No. 64-1 at 3.) These are both examples of safeguards taken to prevent confidential information from being distributed. The Court finds that these constitute sufficient safeguards against disclosure of confidential information while still accomplishing the task of providing a copy service for inmates and therefore does not constitute conduct that is more than negligent.[5] *Beard*, 2014 WL 3507196 at *6.

---

[5] The Court notes that this policy has since been abandoned. (*See* ECF No. 45 at 11 (Williams's motion for summary judgment acknowledging the policy had ended by November of 2020); ECF No. 64-1 at 3 (Bequette's declaration stating, "we are no longer providing scratch paper to the school.").)

Based on the above, Bequette has met her burden on summary judgment by providing admissible evidence such that it would be unreasonable for a juror to find that she did violate Williams's Fourteenth Amendment right to privacy. *See Pakootas*, 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Consequently, Bequette is entitled to summary judgment because, even when viewing the facts in the light most favorable to Williams, her conduct does not rise above negligence. *Davidson*, 474 U.S. at 331.

### C.  Claim 2 – First Amendment

Next, the Court turns to the merits of Claim 2 with respect to Defendant Bequette. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Beard v. Banks*, 548 U.S. 521, 528 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam); *see also Nordstrom v. Ryan*, 856 F.3d 1265, 1271 (9th Cir. 2017). Prison regulations concerning outgoing prisoner mail may need to further "important or substantial governmental interest[s] unrelated to the suppression of expression," *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), limited by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989), and they must at least more closely fit the interest served than regulations concerning incoming mail, *see Thornburgh*, 490 U.S. at 412; *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam); *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam); *see also Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 878– 79 (9th Cir. 2002). Prison officials may visually inspect outgoing mail to determine whether it contains contraband material that threatens prison security or

material threatening the safety of the recipient. *See Witherow*, 52 F.3d at 266; *Royse v. Superior Court*, 779 F.2d 573, 574–75 (9th Cir. 1986).

Williams was allowed to proceed on a First Amendment claim for improper handling of his legal mail. (ECF Nos. 34, 36.) Williams alleges that "inmates were tasked with sorting through the 'junk' to determine what was or 'wasn't' (sic) confidential." (ECF No. 45 at 22 (quoting ECF No. 34.) Thus, Williams alleges the policy violated his First Amendment right to private legal mail by allowing other inmates to read his mail during the sorting process. (ECF Nos. 34, 45.)

As explained above, the declarations provided by Williams do not establish that the law library sent scratch paper to education which included Williams's confidential information or legal mail. (*See* ECF No. 34 at 32-37; ECF No. 45 at 28.) The declarations from Williams only concern what happened to the scratch paper after it left the law library. (*Id.*) Williams does not provide any sworn declarations from individuals with personal knowledge of how the copy request forms were handled in the law library. Critically, Williams does not provide admissible evidence that shows inmates were, in fact, tasked with sorting through papers containing legal correspondence. By failing to provide any admissible evidence to support his claim, Williams has failed to meet his burden on summary judgment. *Soremekun*, 509 F.3d at 984.

Turning to Defendants' burden on summary judgment, Bequette's declaration establishes that copies of personal papers or legal documents were not kept in the law library and copies would either be given to the inmate or destroyed immediately if an error occurred during copying. (ECF No. 64-1 at 3.) Although Bequette does admit that the law library used to use discarded copy request forms as scratch paper, her declaration also establishes that the forms only contain the inmate's name and prison identification number, which NDOC does not consider confidential. (ECF No. 58-1; ECF No. 64-1 at 2.) Here, the undisputed facts show that "bad copies" of personal or legal documents were immediately destroyed. As the documents were immediately destroyed, it is impossible for the documents to have been put into a pile for inmates to sort. Accordingly, Defendants

have met their burden of showing there is no genuine dispute of material facts that Williams's First Amendment rights to legal mail were not violated, and Defendants are therefore entitled to summary judgment on this claim. *Celotex*, 477 U.S. at 322.

### D.    Claim 3 – Eighth Amendment

Finally, the Court will evaluate whether Defendants violated Williams's Eight Amendment rights. Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *Id.*

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety.

*Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other..." *Farmer*, 511 U.S. at 836. "[T]he official's conduct must have been "wanton," which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). Wantonness does not have a fixed meaning but must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Wilson*, 501 U.S. at 302 (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Williams argues Defendants disregarded his safety by denying his request for a protective transfer and allowing law library and education workers to be moved into his unit. (ECF No. 45 at 11, 23.) Williams alleges the law library's scratch paper policy caused him to face "ostracizm (sic), threats, acts of violence, labels of snitch, harassment, etc." (*Id.*) Specifically, Williams's complaint alleges LeGrand and Garrett disregarded his complaints in grievances and disregarded his safety by allowing his "harassers" to be moved into his unit and "release[ing] a known enemy to the yard with [Williams]." (ECF No. 34 at 24, 29.)

Defendants argue they were not deliberately indifferent to Williams's safety by denying his requests to transfer to NNCC because all inmate movement between institutions is coordinated by the Offender Management Division. (ECF No. 58-9 at 2; ECF No. 58-10; ECF No. 58-10 at 3.) Garrett, Carpenter, LeGrand, and Baker did not have authority to authorize a transfer to another NDOC institution. (ECF No. 58-11 at 2; ECF No. 58-10; ECF No. 58-8 at 2; ECF No. 58-9 at 2.) While Garrett did receive a grievance from Williams about a transfer to another NDOC facility, he did not have authority to authorize a transfer. (ECF No. 58-11 at 2.) To satisfy the subjective element of an Eighth Amendment deliberate indifference claim, Williams must show that Defendants' conduct was wanton. *Frost*, 152 F.3d at 1128 (citations omitted). Although wantonness does not

have a fixed meaning, because "whether [an official's conduct] can be characterized as 'wanton' depends upon the constraints facing the *official*," the inability of Defendants to act to transfer Williams out of LLC means that their conduct cannot have been wanton. *Frost*, 152 F.3d at 1128; *Wilson*, 501 U.S. at 302 (citations omitted).

Turning to the transfers within LCC, Williams specifically argues LeGrand and Garrett disregarded his safety because "all the law library and education workers were moved into" his unit after they denied his protective transfer. (ECF No. 45 at 10-11.) However, Williams does not support this allegation with facts in the record. Rather, Williams merely states that Defendants are responsible. This is insufficient to meet his burden on summary judgment. *Soremekun*, 509 F.3d at 984 (conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute).

By contrast, Defendants have provided a sworn declaration from LeGrand stating she did not authorize any transfers of law library workers into Willaims's unit. (ECF No. 58-8 at 3.) As a caseworker, LeGrand could forward requests for inmate transfers or recommend a classification hearing but did not have the authority to order a transfer on her own. (*Id.*) LeGrand and Garrett's sworn declarations also establish that during the subject time frame, there were times that workers were housed in the same unit due to Covid protocols. (ECF No. 58-8 at 3; ECF No. 58-11 at 3.) The declarations also establish that those Covid protocols prompted many bed moves during that time period. (*Id.*) However, LeGrand and Garrett both declare they did not authorize any moves into Williams's unit for any other purpose. (*Id.*)

Based on this review of the evidence, there is no evidence to show that the movement of law library and education workers into Williams's unit was in knowing disregard of any risk to Williams's safety. Rather, the admissible evidence provided by Defendants, and undisputed by Williams, establishes that the transfers were undertaken due to constraints placed on officials by Covid protocols. Thus, there is no genuine dispute of material facts that Defendants were deliberately indifferent to Williams's safety by

allowing law library and education workers to be moved into his unit. *See Pakootas*, 905 F.3d at 593-94; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Consequently, the Court finds that Defendants are entitled to summary judgment in its entirety.[6]

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Williams's motion for summary judgment, (ECF No. 45), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, (ECF No. 58), is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of the Court **CLOSE** this case and **ENTER JUDGMENT** accordingly.

**IT IS SO ORDERED.**

**DATED**: ___July 31, 2024___.

**UNITED STATES MAGISTRATE JUDGE**

---

[6] The Court does not reach Defendants' qualified immunity argument because it finds Defendants are entitled to summary judgment on other grounds.